DECISION AND JOURNAL ENTRY
{¶ 1} Defendant-Appellant Anthony W. Knode has appealed his convictions and sentence from the Court of Common Pleas of Wayne County for pandering sexually oriented matter involving a minor and illegal use of a minor in nudity-oriented material. This Court affirms.
 I {¶ 2} On June 2, 2002, Appellant was charged with three counts of pandering sexually oriented matter involving a minor ("pandering sexually oriented matter"), a violation of R.C. 2907.322(A)(5), and three counts of illegal use of a minor in nudity oriented material ("illegal use of a minor"), a violation of R.C. 2907.323(A)(3). Appellant pleaded not guilty to all charges as charged in the indictment and the matter proceeded to a jury trial.
 {¶ 3} At trial, the State called a thirteen year old girl ("Victim") to testify that she posted her digital photograph and a personal profile on "Face the Jury," an on-line meeting place where individuals over the age of eighteen evaluated each other's appearance and conversed. Victim stated in her personal profile that she was thirty-six years old at the time she posted her image, and gave herself the screen name "How Many Licks." Appellant was also a member of "Face the Jury," and began conversing with Victim on-line using the screen name "kkobi2000."
 {¶ 4} Victim's testimony revealed that she and Appellant engaged in internet conversations and exchanged photographs, at which time she told him that she was sixteen years old. She further testified that after she told Appellant she was sixteen years old, she e-mailed him a photograph of her vagina ("State's Exhibit A-Count 4") because she thought he wanted to see a sexual image of her. Victim's testimony revealed that she and Appellant ultimately met in person and they engaged in sexual intercourse. Victim's sister informed the Victim's parents of the sexual encounter with Appellant, at which point her parents called the Berea Police Department. An investigation commenced in an attempt to identify and locate Appellant.
 {¶ 5} On cross-examination, Victim testified that she informed Appellant that she was sixteen years old prior to her sending him State's Exhibit A — Count 4. On re-direct examination, she also testified that Appellant told her that he liked the picture of her vagina and asked her if she had any more such photos.
 {¶ 6} The State next called Officer Charles Gute of the Berea Police Department to testify. He testified that he was assigned to investigate the events surrounding Victim's sexual activity with a then unknown man she met on the internet. Officer Gute testified that he obtained Appellant's name and address by subpoenaing America Online to release to him the name and address of the individual using the screen name "kkobi2000" on "Face the Jury." The officer also testified to various elements of the investigation, including the execution of a search warrant of Appellant's home and the subsequent arrest of Appellant for unlawful sexual conduct with a minor.[1] The officer testified that Appellant's computer was confiscated and searched when he was arrested, and that the officer found "[s]everal pictures of what we could consider minors engaged in sexual activity or in nudity."
 {¶ 7} The State also called Officer King of the Northeast Ohio Internet Crimes Against Children Task Force to testify. He testified to the process that was undertaken to confiscate Appellant's computer while executing the search warrant. He also testified as to the mechanical process undertaken to download the data from Appellant's computer and conduct a full scale forensic examination of the computer. During his testimony, he stated that he "observed numerous young ladies, females, that appear[ed] to be under the age of [eighteen] engaged in various sexual acts."
 {¶ 8} Appellant testified in his own defense. Appellant testified that he was under the impression that Victim was thirty-six years old when he received, downloaded, and saved State's Exhibit A-Count 4. Appellant further testified that he did not ask Victim to send him State's Exhibit A-Count 4, and he thought that he had deleted it after it had been opened.
 {¶ 9} Appellant also testified that after he had been arrested and indicted on the charges in the instant matter, and retained counsel in that regard, he had engaged in on-line conversations with a girl using the screen name "Nicole15b" ("Nicole"). He denied that he asked Nicole any lewd or sexually suggestive questions.
 {¶ 10} Appellant testified that he was not aware that a data trail to various images of females engaged in sexual conduct was stored as temporary internet files on his computer. Two of these images depicted minors engaged in fellatio and served as the basis for his convictions for pandering sexually oriented matter and will hereinafter be referred to as State's Exhibit N-Count 1 and State's Exhibit I-Count 3. Appellant also claimed to have no memory of visiting the websites to which the data trails were connected with respect to State's Exhibit N-Count 1 and State's Exhibit I-Count 3.
 {¶ 11} Immediately following Appellant's cross-examination, the State called Officer Gute to testify as a rebuttal witness. Officer Gute testified that his primary duty with the Berea Police Department was to work with the Northeast Ohio Internet Crimes Against Children Task Force. In this capacity, his duties were to work undercover on the internet and pose as an underage girl. While undercover, he testified, he would chat on-line with unsuspecting men and search for "travelers." He defined "travelers" as men who would befriend young girls on the internet then travel to their home to have sex with them. He then testified that he had posed as Nicole, whom Appellant had previously testified to chatting with on-line. Appellant's counsel objected to the officer's testimony, arguing that under Crim.R. 16, a transcript of Appellant's conversations with Officer Gute should have been given to Appellant prior to trial. The trial court sustained the objection on the ground that because Officer Gute knew that Appellant had retained counsel, Officer Gute should not have instigated a conversation with Appellant. The trial court struck all of Officer Gute's rebuttal testimony from the record. Counsel did not ask the trial court to strike any reference that Appellant made to Nicole during his prior testimony.
 {¶ 12} Following a jury trial in Wayne County, Appellant was convicted of two counts of pandering sexually oriented matter in violation of R.C. 2907.322 resulting from his possession of State's Exhibit N-Count 1 and State's Exhibit I-Count 3. He was also convicted of one count of illegal use of a minor, in violation of R.C. 2907.323
resulting from his possession of State's Exhibit A-Count 4. He was sentenced to two terms of sixteen months incarceration resulting from each of his convictions of pandering sexually oriented matter, to be served concurrently. He was also sentenced to a term of eleven months incarceration resulting from his conviction of illegal use of a minor in nudity, to be served concurrently with his sentence for pandering sexually oriented matter.
 {¶ 13} Appellant has timely appealed, asserting four assignments of error. We have rearranged and consolidated Appellant's assignments of error to facilitate review.
 II Assignment of Error Number Three
"[Appellant's] conviction for pandering sexually oriented material involving a minor was not supported by sufficient evidence."
 Assignment of Error Number Four
"[Appellant's] convictions are against the manifest wieght of the evidence."
 {¶ 14} In his third and fourth assignments of error, Appellant has argued that his convictions for pandering sexually oriented matter were not supported by sufficient evidence. He has further argued that his convictions for pandering sexually oriented matter and illegal use of minor in nudity were against the manifest weight of the evidence. Specifically, Appellant has argued that the State failed to prove that the females depicted in State's Exhibit N-Count 1 and State's Exhibit I-Count 3, which served as the basis of his pandering sexually oriented matter convictions, were under the age of eighteen. He has further argued that he did not knowingly possess both images. Appellant has also contended that the State failed to prove that he had the requisite mental state of recklessness to sustain his conviction for illegal use of a minor in nudity stemming from his possession of State's Exhibit A-Count 4. We disagree.
 {¶ 15} Crim.R. 29(A) provides that a trial court "shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." Review of the sufficiency of the evidence put forth by the State to convict a defendant at trial, or the manifest weight of the evidence put forth at trial "are separate and legally distinct determinations." State v. Leyman (Oct. 4, 2000), 9th Dist. No. 2970-M, at 5. "While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion." State v. Gulley (Mar. 15, 2000), 9th Dist. No. 19600, at 3. This Court must review the evidence in a light most favorable to the prosecution in order to determine whether the evidence before the trial court was sufficient to sustain a conviction. Furthermore:
"An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus; see, also, State v. Thompkins (1997), 78 Ohio St.3d 380, 386.
 {¶ 16} While the test for sufficiency requires a determination of whether the State has met its burden of production at trial, a manifest weight challenge questions whether the State has met its burden of persuasion. Thompkins, 78 Ohio St.3d at 386. An appellate court does not view the evidence in the light most favorable to the State when determining if it has met its burden of persuasion. Gulley, supra, at 3. Instead, an appellate court must:
"[R]eview the entire record, weight the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten
(1986), 33 Ohio App.3d 339, 340.
 {¶ 17} It is the exceptional case where the evidence weighs heavily in favor of the defendant. Id. In State v. Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462, at 4, this Court said that:
"[S]ufficiency is required to take a case to the jury. * * * Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." (Emphasis omitted.)
 {¶ 18} This Court will separately address and discuss each exhibit that formed the basis of Appellant's convictions.
 State's Exhibit N-Count 1 {¶ 19} Appellant has argued that the State failed to prove that he 1) knowingly possessed State's Exhibit N-Count 1; 2) the image did not depict a minor engaged in sexual conduct; and 3) because the image was not downloaded, but rather only traceable in his temporary internet files to an on-line source, he could not be imputed with knowledge of the characteristics of the image nor possession of the image as required under R.C. 2907.322. The State, on the other hand, has argued that the jury drew reasonable inferences regarding Appellant's conduct and knowledge, and that its inferences were based on credible evidence presented at trial.
 {¶ 20} Ohio's statute prohibiting pandering of sexually oriented matter involving a minor is found at R.C. 2907.322 and states, in pertinent part:
"(A) No person, with knowledge of the character of the material or performance involved, shall do any of the following:
"(5) Knowingly solicit, receive, purchase, exchange, possess, or control any material that shows a minor participating or engaging in sexual activity, masturbation, or bestiality[.]"
 {¶ 21} R.C. 2907.01(M) defines a "minor" as "a person under the age of eighteen." R.C. 2907.01 (C) defines "sexual activity" as "sexual conduct or sexual contact, or both." R.C. 2907.01(A) defines "sexual conduct" as:
"[V]aginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal cavity of another. * * *"
 {¶ 22} R.C. 2907.01(B) defines "sexual contact" as:
"[A]ny touching of any erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person."
 {¶ 23} R.C. 2901.22(B) provides that a person acts knowingly "when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C.2901.21(D)(1) defines "possession" as "a voluntary act if the possessor knowingly procured or received the thing possessed, or was aware of the possessor's control of the thing possessed for a sufficient time to have ended possession."
 {¶ 24} In addition to State's Exhibit N-Count 1, the State submitted various other pornographic images found on Appellant's computer into evidence as well as relevant computer data from Appellant's computer. Such evidence included a computer data trail chronicling Appellant's visits to various pornographic websites featuring young girls, including "Anal Sex Teens," "Teen Hardcore Pic Trading," and "Naked Pics of Hot Teenage Girls."
 {¶ 25} In addition to his aforementioned testimony, Officer King testified as to the definition of "temporary internet files" and the characteristics associated with images stored in such files. The following colloquy between Officer King and the prosecuting attorney took place, without objection:
"A: [A] [t]emporary internet file is like a viewing area. When you call a document to your computer, your computer has to be able to read it. So what it does is it places the information in a temporary space of a virtual memory space that allows you to look at it while you have it on the screen. It has to reside somewhere for * * * the machine to read it, so it places it there. After you finish looking at it, it doesn't like put it in a specific folder that you create. It puts it in a folder that is created by the computer. Now, the internet browser, when you call out a document, it looks for certain things in its heading box. And in that header box[,] based on the content that you've asked for and the content that is associated with that header, it's at the body of that document that you're calling out[.] [T]he browser read that and groups it and brings it to you.
"Q: "Does it also act as what is known as a cash to hold files that you've previously viewed before so that they come up faster?
"A: Yes. Just like when you access the internet and you go to several sites. If you do your banking, the first time you go on it takes a while for it to find that address. But if you do it continually, since it's [cached], it calls it up right away because it puts it in a temporary space so it can recall it quicker."
 {¶ 26} Officer King later testified that both a thumbnail image and a full viewing size image of State's Exhibit N-Count 1 was found in the temporary internet files of Appellant's hard drive. He defined a thumbnail image as a "small [capture] of what would be larger photographs. * * * So that if you were looking at [fifteen] different types of corvettes * * * they would all be able to be lined up on one page. And if you were interested in looking at one you could connect with that one and bring it up in and of itself." He explained that "connecting" with a thumbnail image meant placing a mouse on that image and clicking on the image, at which time the computer would direct the viewer to a page containing the full viewing size of the thumbnail image.
 {¶ 27} After careful review of the record, this Court cannot conclude that the jury lost its way and created a manifest miscarriage of justice when it convicted Appellant of knowingly possessing State's Exhibit N-Count 1, and that the image depicted a minor engaged in sexual conduct. The jury was entitled to believe the testimony of Officers Gute and King that the images found on Appellant's computer were those of minors engaged in sexual activity. We further conclude that the jury could have viewed the thumbnail of State's Exhibit N-Count 1 and reasonably concluded that the thumbnail depicted a minor engaged in fellatio. Thus we find that the existence of the data trail that led to State's Exhibit N-Count 1 as a thumbnail image evidenced knowledge of the character of the material contained in the image as well as possession of the image. In addition, when Appellant clicked on the thumbnail image and enlarged it to its full viewing size, we find that he did so with the knowledge that the full viewing size image would contain a depiction of a minor engaged in fellatio. The jury could reasonably have found that Appellant knowingly possessed the full viewing size image in violation of R.C. 2907.322. Therefore, Appellant's conviction for pandering sexually oriented matter resulting from his possession of State's Exhibit N-Count 1 was not against the manifest weight of the evidence. As such, we necessarily find that State's Exhibit N — Count 1 was sufficient to support his conviction for pandering sexually oriented matter.
 State's Exhibit I-Count 3 {¶ 28} In addition to his aforementioned testimony, Officer King testified that the data trail leading to State's Exhibit I-Count 3 was found in the temporary internet files of Appellant's hard drive. Officer King testified that the material downloaded from Appellant's hard drive revealed that Appellant had visited the website "Analsexteens Anal Sex Teens — pics of girls who like anal sex." Officer King further testified that the data trail revealed that, upon visiting this website, Appellant was presented with fifteen thumbnail size images, from which Appellant selected thumbnail number thirteen, entitled "teenysweeties_9.jpg." Thumbnail thirteen is State's Exhibit I-Count 3 depicting a young girl engaged in fellatio. The officer then testified that the data trail from Appellant's computer revealed that Appellant enlarged State's Exhibit I-Count 3 to its full viewing size, and that the data trail leading to the full viewing size of the image was found on the hard drive of Appellant's computer.
 {¶ 29} This Court cannot conclude that the jury lost its way and created a manifest miscarriage of justice when it convicted Appellant of knowingly possessing State's Exhibit I-Count 3, and that the image depicted a minor engaged in sexual conduct. The jury was entitled to believe the testimony of Officers King and Gute when they testified that the images found on Appellant's computer were clearly those of minors engaged in sexual activity. We further conclude that the jury was entitled to conclude, based on the evidence and testimony presented at trial, that Appellant visited the website with the knowledge that the material presented on the website might depict minors engaged in sexual activity proscribed by R.C. 2907.322. We also conclude that the jury could reasonably have found that Appellant knowingly possessed State's Exhibit I-Count 3 in its full viewing size, and that Appellant had knowledge of the character of the material contained in the image as well as possession of the image. Therefore, Appellant's conviction for pandering sexually oriented matter resulting from his possession of State's Exhibit I-Count 3 was not against the manifest weight of the evidence. Consequently, we find that such evidence was sufficient to support his conviction.
 State's Exhibit A-Count 4 {¶ 30} With regard to his conviction for illegal use of a minor in nudity, Appellant has argued that he was not reckless in his belief that the victim was over the age of eighteen, and therefore it was not a violation of R.C. 2907.323 for him to possess State's Exhibit A-Count 4. The State has argued, however, that the jury drew reasonable inferences regarding Appellant's conduct and knowledge with respect to Victim's age.
 {¶ 31} R.C. 2907.323(A)(3) states, in pertinent part:
"(A) No person shall do any of the following:
"(3) Possess or view any material or performance that shows a minor who is not the person's child or ward in a state of nudity * * *[.]"
(a) The material or performance is * * * possessed * * * by or to a physician, psychologist, sociologist, scientist, teacher, person pursuing bona fide studies or research, librarianm clergyman, prosecutor, judge, or other person having a proper interest in the material or performance.
(b) The person knows that the parents, guardian, or custodian has consented in writing to the photographing or use of the minor in a state of nudity and to the manner in which the material or performance is used or transferred."
R.C. 2907.01(H) defines "nudity" as:
"[T]he showing, representation, or depiction of human male or female genitals, pubic area, or buttocks with less than a full, opaque covering, or of a female breast with less than a full, opaque covering of any portion thereof below the top of the nipple, or of covered male genitals in a discernibly turgid state."
 {¶ 32} R.C. 2907.323(A)(3) does not articulate the state of mind required to sustain a conviction. Therefore, pursuant to R.C. 2901.21, recklessness is required to sustain a conviction under R.C. 2907.323. R.C. 2901.21(B) states, in pertinent part:
"When the section defining an offense does not specify any degree of culpability, and plainly indicates a purpose to impose strict criminal liability for the conduct described in the section, then culpability is not required for a person to be guilty of the offense. When the section neither specifies culpability nor plainly indicates a purpose to impose strict liability, recklessness is sufficient culpability to commit the offense."
 {¶ 33} "Recklessness" is defined in R.C. 2901.22(C), and states that a person acts with recklessness when "with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist."
 {¶ 34} In addition to his aforementioned testimony, Appellant testified that when he received State's Exhibit A-Count 4, he was under the belief, based on Victim's own protestations, that she was thirty-six years old. He further testified that Victim did not inform him that she was sixteen years old until just prior to the time they engaged in sexual intercourse. Victim, however, testified that she informed Appellant that she was sixteen years old prior to her sending him State's Evidence A-Count 4, and that he thanked her for the photograph and said that he liked the photograph.
 {¶ 35} After careful review of the record, this Court cannot conclude that the jury lost its way and created a manifest miscarriage of justice when it convicted Appellant of knowingly possessing an image of a minor in a state of nudity. Based on the evidence and testimony presented, the jury was entitled to find Appellant reckless in his belief that the victim was over the age of eighteen and thus it was unlawful for him to possess State's Exhibit A-Count 4. Therefore, Appellant's conviction for illegal use of a minor in nudity resulting from his possession of State's Exhibit A-Count 4 was not against the manifest weight of the evidence.
 {¶ 36} As a result of the foregoing, Appellant's third and fourth assignments of error are without merit.
 Assignment of Error Number One
"The trial court abused its discretion by sentencing appellant to more than the minimum term of incarceration, in violation of R.C. 2929.14(b)."
 {¶ 37} In his first assignment of error, Appellant has argued that the trial court abused its discretion when it failed to sentence him to the minimum term of incarceration for his convictions. Specifically, Appellant has argued that because he had never before been incarcerated, he was entitled to the minimum term of incarceration. He has further argued that the trial court's findings that the shortest term of incarceration would: (1) demean the seriousness of the crimes committed, and (2) not adequately protect the public, were not supported by law. We disagree.
 {¶ 38} Pursuant to R.C. 2953.08(G)(2), an appellate court reviews a trial court's imposition of sentence under the clear and convincing standard of review, asking itself if the trial court clearly and convincingly acted contrary to law or the record. Clear and convincing evidence is evidence that "will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established."Cincinnati Bar Assn. v. Massengale (1991), 58 Ohio St.3d 121, 122, quoting Cross v. Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus.
 {¶ 39} Sentencing guidelines are governed by Chapter 2929 of the Ohio Revised Code. When sentencing a felony offender, a trial court must consider the overriding purposes of felony sentencing, which are namely to protect the public from future crime and to punish the offender. R.C.2929.11(A); State v. Comer, 99 Ohio St.3d 463, 2003-Ohio-4165, ¶ 11. The trial court must impose a felony sentence that is reasonably calculated to achieve these goals yet is "commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and consistent with sentences imposed for similar crimes committed by similar offenders." R.C. 2929.11(B). "The trial court must consider the factors found in R.C. 2929.12(B) and (C) to determine how to accomplish the purposes embraced in R.C. 2929.11." Comer, 2003-Ohio 4165 at ¶ 13.
 {¶ 40} R.C. 2929.12(B) states, in pertinent part:
"The sentencing court shall consider all of the following that apply regarding the offender, the offense, or the victim, and any other relevant factors, as indicating that the offender's conduct is more serious than conduct normally constituting the offense[.]"
 {¶ 41} The section goes on to list a series of factors that should be considered by the sentencing court, including but not limited to the mental injury suffered by the victim due to her age, and the psychological harm suffered by the victim.
 {¶ 42} R.C. 2929.12(C) states, in pertinent part:
"The sentencing court shall consider all of the following that apply regarding the offender, the offense, or the victim, and any other relevant factors, as indicating that the offender's conduct is less serious than conduct normally constituting the offense:
"(1) The victim induced or facilitated the offense.
"(2) In committing the offense, the offender acted under strong provocation.
"(3) In committing the offense, the offender did not cause or expect to cause physical harm to any person or property.
"(4) There are substantial grounds to mitigate the offender's conduct, although the grounds are not enough to constitute a defense."
 {¶ 43} In sentencing Appellant to pandering sexually oriented matter, a felony of the fourth degree, and illegal use of a minor in nudity, a felony of the fifth degree, the trial court was required to rely on R.C. 2929.14(A). At the time Appellant was sentenced, that section provided:
"(A) Except as provided in [R.C. 2929.14] (C), (D)(1), (D)(2), (D)(3), (D)(4), or (G) * * * and except in relation to an offense for which a sentence of death or life imprisonment is to be imposed, if the court imposing a sentence upon an offender for a felony elects or is required to impose a prison term on the offender pursuant to this chapter and is not prohibited by [R.C. 2929.13 (G)(1)] from imposing a prison term on the offender, the court shall impose a definite prison term that shall be one of the following:
"* * *
"(4) For a felony of the fourth degree, the prison term shall be six, seven, eight, nine, ten, eleven, twelve, thirteen, fourteen, fifteen, sixteen, seventeen, or eighteen months.
"(5) For a felony of the fifth degree, the prison term shall be six, seven, eight, nine, ten, eleven, or twelve months."
 {¶ 44} Here, the trial court sentenced Appellant to more than the minimum sentence on each conviction. For his convictions of pandering sexually oriented matter, the trial court sentenced Appellant to two terms of incarceration for sixteen months. Appellant was sentenced to eleven months incarceration for his conviction of illegal use of a minor. In sentencing Appellant to more than the minimum the trial court was required to make certain findings pursuant to R.C. 2929.14(B). That section requires that:
"(B) * * * [I]f the court imposing a sentence upon an offender for a felony elects or is required to impose a prison term on the offender, the court shall impose the shortest prison term authorized for the offense pursuant to [R.C. 2929.14(A)], unless one or more of the following applies:
"(1) The offender was serving a prison term at the time of the offense, or the offender previously had served a prison term.
"(2) The court finds on the record that the shortest prison term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crime by the offender or others."
 {¶ 45} The Ohio Supreme Court recently held in Comer that when imposing a nonminimum sentence on a first-time offender, the trial court must make such findings at the sentencing hearing. Comer,2003-Ohio-4165, at paragraph two of the syllabus. Thus the trial court was required to determine at the sentencing hearing whether in sentencing Appellant to the shortest prison term would demean the seriousness of his conduct or the public would not be adequately protected from future crimes.
 {¶ 46} The record reveals that the trial court found that Appellant was "not amenable to an available combination of community control sanctions." The trial court also stated that it:
"[C]onsidered the record, oral statements, any impact victim statement, the presentence report, the purposes and principles of sentencing under R.C. 2929.11, the seriousness and recidivism factors relevant to the offense and offender pursuant to R.C. 2929.12, and the need for deterrence, incapacitation, rehabilitation and restitution."
 {¶ 47} Most importantly, the trial court stated that:
"Now, with respect to the Statute, under 2929.14 the Court is required to consider a number of things. And one of them is whether or not you violated one of the enumerated sex offender statutes. And you did, and that is a factor in supporting a prison term in this case. You have not previously served a prison term. The Court is required to consider the minimum term unless it finds that the minimum term would demean the seriousness of the offense. And again for the reasons that I've cited, I do believe that the minimum term would demean the seriousness of the offense."
 {¶ 48} This Court concludes that such a finding was adequately supported by the record.
 {¶ 49} Appellant has further argued that the trial court committed an abuse of discretion when it noted:
"[1] that Appellant had engaged in sex with a thirteen year old, [2] that an image of a child performing oral sex was found on Appellant's computer, [3] that Appellant had not demonstrated remorse, and [4] that Appellant had contributed to the world wide exploitation of children by viewing any sexually oriented material of minors portrayed in a sexual manner."
 {¶ 50} Contrary to these arguments, we find that the trial court did not abuse its discretion when it noted Appellant's own testimony that he had engaged in sexual intercourse with Victim. Second, the trial court was correct in considering Appellant's conviction on two counts of possessing a photograph of a minor engaged in fellatio in violation R.C.2907.322 notwithstanding Appellant's continued denials that he knowingly possessed State's Exhibit N-Count 1 and State's Exhibt I-Count 3. Third, pursuant to R.C. 2929.12(E)(5), a trial court must take an offender's remorse or lack thereof into consideration at sentencing. Appellant made it clear to the trial court, and this Court as well for that matter, that he has no remorse for his actions that have been found to be criminal offenses in both Wayne County and Cuyahoga County. The trial court was well within its discretion to note Appellant's lack of remorse at the time of sentencing. And lastly, the trial court did not abuse its discretion when it took the inadmissible evidence of Appellant's on-line conversations with an undercover police officer posing as a fifteen year old girl into consideration when sentencing Appellant for his convictions. See U.S. v. Jenkins (C.A. 6, 1993), 4 F.3d 1338, 1344, certiorari denied, Warren v. U.S. (1994), 511 U.S. 1034, 114 S.Ct. 1547,128 L.Ed. 197 (holding that illegally seized evidence may be considered by a trial court at sentencing).
 {¶ 51} Based on the foregoing, this Court concludes that the trial court did not act contrary to the law when it sentenced Appellant to more than the minimum term of incarceration for his convictions under R.C.2907.322 and R.C. 2907.323. Appellant's first assignment of error is without merit.
 Assignment of Error Number Two
"The trial court abused its discretion by failing to grant appellant's motions for a mistrial."
 {¶ 52} In his second assignment of error, Appellant has argued that the trial court abused its discretion when it failed to grant his motion for a mistrial. Specifically, he has argued that the prosecution violated Crim.R. 16 when it failed to give him a transcript of statements he made to an undercover police after he had been indicted for pandering sexually oriented matter and illegal use of a minor. He has further argued that this failure resulted in prejudice to his defense. We disagree.
 {¶ 53} The essential inquiry a trial court must make when entertaining a motion for mistrial is whether the substantial rights of the accused have been adversely affected. State v. Damberger (Aug. 30, 2000), 9th Dist. No. 3024-M, at 4, appeal not allowed (2001),91 Ohio St.3d 1415, citing State v. Nichols (1993), 85 Ohio App.3d 65, 69. A mistrial is necessary only when a fair trial is no longer possible.State v. Franklin (1991), 62 Ohio St.3d 118, 127, certiorari denied (1992), 504 U.S. 960, 112 S.Ct. 2315, 119 L.Ed.2d 235. Great deference is afforded to a trial court's decision regarding a motion for mistrial and the court's ruling will be reversed only upon the showing of an abuse of discretion. State v. Stewart (1996), 111 Ohio App.3d 525, 533. An abuse of discretion is more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219. When applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. Pons v. Ohio State Med. Bd.
(1993), 66 Ohio St.3d 619, 621.
 {¶ 54} In State v. Joseph (1995), 73 Ohio St.3d 450, certiorari denied (1996) 516 U.S. 1178, 116 S.Ct. 1277, 134 L.Ed.2d 222, the Supreme Court of Ohio articulated the standard for reversals in the context of discovery violations, stating that:
"Prosecutorial violations of Crim.R. 16 are reversible only when there is a showing that (1) the prosecution's failure to disclose was a willful violation of the rule, (2) foreknowledge of the information would have benefited the accused in the preparation of his defense, and (3) the accused suffered some prejudicial effect." Joseph, 73 Ohio St.3d at 458, citing State v. Parson (1983), 6 Ohio St.3d 442, 445.
 {¶ 55} In the instant matter, Appellant moved for a mistrial following the jury verdict. Appellant's motion was based on the State's failure to provide a transcript of statements made by Appellant to Officer Gute while operating undercover as Nicole. Appellant contended that the statements were subsequently used against him in violation of Crim.R. 16.[2] The State argued that Appellant was not entitled to a transcript of his conversations prior to trial because it did not anticipate using the statements against Appellant. The State further argued that the statements would be used only if Appellant committed perjury on the stand, at which point the statements would be used to impeach his testimony.
 {¶ 56} At trial, Appellant testified that he was not sexually attracted to children. He further testified that following his indictment for the charges in the instant matter, he engaged in on-line conversations with Nicole. On cross-examination, Appellant denied asking Nicole any sexually suggestive questions, including whether or not she was a virgin or when she would turn sixteen. Counsel did not object to this line of questioning.
 {¶ 57} Following its decision to sustain Appellant's objection to Officer Gute's rebuttal testimony, the trial court gave the following limiting instruction:
"All right, members of the jury, with respect to Detective Gute's testimony on [r]ebuttal, only the matters he got into just now, for reasons I can't disclose, but I do instruct you to disregard his testimony on [r]ebuttal only."
 {¶ 58} In Ohio, it is presumed that a jury will follow a trial court's instruction to disregard testimony that has been stricken from the record. See Browning v. Ohio (1929), 120 Ohio St. 62, 72; State v.Dunkins (1983), 10 Ohio App.3d 72, 73. The record does not indicate that the jury disregarded the trial court's instruction, nor has Appellant demonstrated that the jury disregarded this instruction. Furthermore, Appellant's testimony regarding his on-line conversations with Nicole included his numerous denials of asking sexually suggestive questions. In essence, he is now arguing that he was prejudiced to the point of requiring a new trial because he denied asking Nicole if she was a virgin and when she would turn sixteen.
 {¶ 59} This Court fails to see how such denials made by Appellant himself could now be viewed as prejudicial. Assuming, without deciding, that the State should have given Appellant transcripts of his conversations with Nicole, we find that the trial court cured any potential prejudice by way of its limiting instruction. The trial court acted within its sound discretion when it overruled Appellant's motion for a mistrial. Consequently, Appellant's second assignment of error is without merit.
 III {¶ 60} Appellant's four assignments of error are overruled. The judgment of the trial court is affirmed.
Judgment affirmed.
Baird, P.J. concurs.
Carr, J, concurs in judgment only.
[1] Appellant pleaded guilty to this offense in Cuyahoga County. Therefore, these charges are not the subject of the instant appeal.
[2] CrimR. 16 states that "[r]elevant written or recorded statements made by the defendant * * * or copies thereof" shall be disclosed by the prosecuting attorney upon motion by the defendant.