[Cite as *State v. Rice*, 2012-Ohio-2174.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| | |
|---|---|
| STATE OF OHIO | C.A. No. 26116 |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| TIMOTHY W. RICE | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No. CR 08 12 3921 |

DECISION AND JOURNAL ENTRY

Dated: May 16, 2012

WHITMORE, Presiding Judge.

{¶1} Defendant-Appellant, Timothy Rice, appeals from his convictions in the Summit County Court of Common Pleas. This Court affirms.

I

{¶2} On the morning of November 15, 2008, M.R. told her mother, Jody Lund, that her father, Rice, had touched her inappropriately. M.R., who was 11 years old at the time, described the abuse as having occurred on multiple occasions since August of 2008. M.R. told Lund that Rice had performed oral sex on her the previous night and licked her breast. Rice also forced M.R. to view pornographic images and a movie on the family's computers during the course of the abuse. M.R. finally decided to tell her mother about the abuse after Rice said she would have to perform fellatio on him. Lund immediately confronted Rice after M.R. told her about the allegations and, according to Lund, Rice confessed to having abused their daughter. The police later conducted DNA testing and found that foreign DNA on M.R.'s right breast was consistent

with Rice's DNA profile. They further found numerous pornographic images and references on the family's two computers.

{¶3} A grand jury indicted Rice on (1) one count of rape, gross sexual imposition, and disseminating matter harmful to juveniles; (2) three counts of the illegal use of a minor in a nudity-oriented material or performance; (3) three counts of pandering sexually oriented matter involving a minor; and (4) six counts of pandering obscenity involving a minor. Rice pleaded guilty to rape and three counts of pandering sexually-oriented matter involving a minor, but the trial court later granted his petition for post-conviction relief and vacated his convictions. Rice then filed a motion to suppress, and a hearing took place. At the end of the hearing, the trial court orally denied Rice's motion.

{¶4} The State dismissed six counts before trial, and the trial resulted in seven guilty verdicts and a mistrial on two counts; the rape count and one count of pandering sexually-oriented matter involving a minor. The State then agreed to dismiss the pandering charge and amend the rape charge to sexual battery in exchange for Rice's guilty plea. As such, Rice ultimately was found guilty of eight charges: sexual battery, gross sexual imposition, disseminating matter harmful to a juvenile, pandering sexually-oriented material involving a minor, two counts of the illegal use of a minor in a nudity-oriented material or performance, and two counts of pandering obscenity to a minor. The trial court sentenced Rice to ten years in prison.

{¶5} Rice now appeals from his convictions and raises seven assignments of error for our review.

II

Assignment of Error Number One

THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY DENYING APPELLANT'S MOTION TO SUPPRESS BASED UPON A FINDING THAT THE WARRANTLESS SEARCH OF COMPUTERS WAS WITHOUT APPELLANT'S CONSENT, THERBY (sic) VIOLATING APPELLANT'S CONSTITUTIONAL RIGHTS TO BE FREE FROM UNREASONABLE SEARCH AND SEIZURE.

{¶6}     In his first assignment of error, Rice argues that the trial court erred by denying his motion to suppress the evidence police seized from several computers in the absence of a warrant. We disagree.

{¶7}     The Ohio Supreme Court has held that:

[a]ppellate review of a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. *State v. Mills*, 62 Ohio St.3d 357, 366 (1992). Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Fanning*, 1 Ohio St.3d 19 (1982). Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard. *State v. McNamara*, 124 Ohio App.3d 706 (4th Dist.1997).

*State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. Accordingly, this Court reviews the trial court's factual findings for competent, credible evidence and considers the court's legal conclusions de novo. *State v. Conley*, 9th Dist. No. 08CA009454, 2009-Ohio-910, ¶ 6, citing *Burnside* at ¶ 8.

{¶8}     The Fourth Amendment to the United States Constitution, as applied to the states through the Fourteenth Amendment, prohibits unreasonable searches and seizures. *Accord* Ohio Constitution, Article I, Section 14. A warrantless search "is 'per se unreasonable * * * subject

only to a few specifically established and well-delineated exceptions.'" *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973), quoting *Katz v. United States*, 389 U.S. 347, 357 (1967).

> One such exception is a search conducted pursuant to consent. * * * [W]hen a person consents to the search of a shared property, the consent of one who possesses common authority over premises or effects is valid as against the absent, nonconsenting person with whom that authority is shared. * * * [C]ommon authority rests on the mutual use of the property by persons generally having joint access or control for most purposes.

(Internal quotations and citations omitted.) *State v. Beougher*, 9th Dist. No. 21378, 2003-Ohio-3591, ¶ 9. The State bears the burden of establishing common authority, but need not prove that actual authority to consent existed. *State v. Chuey*, 9th Dist. No. 2937-M, 2000 WL 487738, *4 (Apr. 26, 2000). The consent will be valid so long as, under the totality of the circumstances as they existed at the time, a reasonable person would have concluded that the consenting party had authority to consent to the search. *Id. Accord Georgia v. Randolph*, 547 U.S. 103, 109 (2006).

{¶9} Detective Jeff Swanson testified that two days after Rice's arrest Lund called the police department because she wanted to bring the computers from her home to the police station. That same day, Lund personally delivered the computers to the police station and signed a general permission to search form. One computer was a Gateway laptop and the other was an HP Pavilion desktop. Detective Swanson testified that, at the time he accepted the computers from Lund, she explained that the family kept the desktop in her daughter's room and the laptop in her son's room. She further explained that the computers belonged to her children, but the entire family used both computers. In particular, the family used the laptop throughout the home.

{¶10} Lund testified that her uncle purchased both the desktop and the laptop for her children, but the entire family used both computers. Because the laptop had a wireless internet connection, it worked everywhere in the house and was used throughout the house. Lund did not

recall the desktop having any password. As to the laptop, she testified that there was a password, but it was a common password for one main user account and the entire family knew the password. She could not remember who created the password, but believed it was either her son or her uncle. Lund specified that she brought the computers to the police station for the purpose of having their contents searched. She testified that, after she heard her daughter's statement, she knew Rice had used the computers when he harmed their daughter. Therefore, she hoped that the police would be able to examine the computers and uncover information to aid their investigation.

{¶11} The trial court denied Rice's motion to suppress after concluding that Lund consented to the search of the computers. Rice first argues that the trial court erred in its conclusion because it specifically found that, at the time Lund consented, the police lacked sufficient information to conclude that she had authority to consent to a search. In explaining her rationale, the trial judge noted that if she were issuing an advisory opinion to the police, she would have advised them to get a warrant. The court stated that, at the time the police obtained Lund's consent, they did not have sufficient proof of her common authority. Because Lund's testimony at the hearing ultimately showed that she had actual authority to consent, however, the court upheld the search.

{¶12} We do not agree that the police lacked sufficient knowledge of Lund's common authority at the time she consented to the search. Lund clearly had physical control of the computers, as she brought them to the police station of her own accord. She also told Detective Swanson when she brought the computers to the police station that the computers were purchased for her children, the entire family used the computers, the desktop was kept in her daughter's room, and the laptop moved freely throughout the house. There was no evidence that

Rice exclusively controlled the computers or that access to them was in any way restricted. All of the evidence pointed to the fact that the computers belonged to Rice's children and were jointly accessed by the entire family. Although the police did not learn until later whether the computers were password protected, a reasonable person could have concluded that Lund had common authority to consent to the search. *See State v. Knisley*, 2d Dist. No. 22897, 2010-Ohio-116, ¶ 42-45 (common authority proven where family members had joint access to a computer and the defense did not introduce any evidence of exclusive control or password protection).

{¶13} Rice also argues that the trial court erred by denying his motion because individuals possess heightened expectations of privacy in computers and those expectations outweigh the interests of law enforcement in conducting a warrantless search. Rice relies upon *State v. Smith*, 124 Ohio St.3d 163, 2009-Ohio-6426. In *Smith*, the Ohio Supreme Court held that police officers may not conduct a warrantless search of data within a cell phone "when the search is unnecessary for the safety of law-enforcement officers and there are no exigent circumstances." *Smith* at syllabus. Rice likens computers to cell phones and argues that the police erred by conducting a warrantless search of the computers here because no exigent circumstances existed. *Smith*, however, arose from a different exception to the warrant requirement. Exigent circumstances were necessary to the holding in *Smith* because the cell phone there was seized incident to a lawful arrest. *Id.* The existence of an exigent circumstance was unnecessary here because the police had Lund's consent to search the computers. Courts considering the warrantless search of a computer in light of a third party's consent to search examine other key factors, including "whether the consenting third party in fact used the computer, whether it was located in a common area accessible to other occupants of the premises, and—often most importantly—whether the defendant's files were password

protected." *United States v. Clutter*, 674 F.3d 980, 984 (8th Cir.2012). *Accord United States v. Stabile*, 633 F.3d 219, 233 (3d Cir.2011). An examination of those factors here supports the trial court's ultimate conclusion that Lund had authority to consent to a search of the computers. Consequently, the court properly denied Rice's motion to suppress the evidence taken from the computers. Rice's first assignment of error is overruled.

Assignment of Error Number Two

> THE TRIAL COURT ERRED BY DENYING APPELLANT'S MOTION TO SUPPRESS THE RESULT OF DNA TESTING WHERE THE STATE CONSUMED THE ENTIRE STANDARD SAMPLES WITHOUT PROVIDING ADVANCE NOTICE OF SUCH CONSUMPTION TO APPELLANT, OR PROVIDING APPELANT (sic) AN OPPORTUNITY TO HAVE A DNA EXPERT OF HIS CHOOSING OBSERVE THE STATE'S TESTING PROCEDURES AND PROCESS IN VIOLATION OF APPELLANT'S CONSTITUTIONAL RIGHTS.

{¶14} In his second assignment of error, Rice argues that the trial court erred by denying his motion to suppress the results the State obtained from DNA testing. Because the test required the consumption of certain samples and the State did not first notify him the samples would be destroyed, Rice argues, the State deprived him of the opportunity to have an independent expert conduct the test and, in doing so, violated his due process rights.

{¶15} We incorporate the standard of review set forth in Rice's first assignment of error. The State need only preserve evidence a reasonable person might expect to be both exculpatory and material in nature. *California v. Trombetta*, 467 U.S. 479, 488 (1984). "To meet this standard of constitutional materiality, * * * evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Id.* at 489. Moreover, if the State destroys evidence of limited exculpatory value (i.e., "potentially useful" evidence), a court only will consider the destruction to be a due process violation if the

defendant shows that the police destroyed the evidence in bad faith. *State v. Geeslin*, 116 Ohio St.3d 252, 2007-Ohio-5239, syllabus, citing *Arizona v. Youngblood*, 488 U.S. 51 (1988). The parties agree that a bad faith standard applies here.

{¶16} Stacy Violi, a forensic scientist with the Bureau of Criminal Identification and Investigation ("BCI"), testified that she examined several swabs taken from M.R.'s rape kit and determined that she would need to consume the samples in their entirety to obtain useful results. Violi requested a consumption letter from the Summit County Prosecutor's Office, explaining that only a limited amount of DNA was present on the swabs and asking for authorization to consume the samples. Violi received a consumption letter on February 6, 2009, and tested the samples the following week. She explained that BCI does not permit anyone to observe the testing a scientist performs on a sample, but that its analysts document all of their work and that documentation is always available to the defense. Violi confirmed that BCI frequently has to consume samples and, if it encounters a challenge to its doing so, BCI will terminate its involvement so that the sample can be diverted to a facility of the parties choosing.

{¶17} Assistant Summit County Prosecutor Jon Baumoel testified that he received Violi's request for a consumption letter in January 2009, less than a month after he started working in the Summit County office. Previously, Baumoel prosecuted cases for the Stark County Prosecutor's Office. He testified that in his fifteen years with the Stark office, he never received a consumption letter. Baumoel explained that Stark County has its own crime lab and that lab routinely consumed samples without first notifying the prosecutor. Baumoel indicated that he consulted a more experienced Summit County prosecutor when he received Violi's request and that prosecutor provided him with a form letter that Baumoel used as a guide to write the consumption letter for Violi. Baumoel stated that it never occurred to him to contact the

defense before he authorized the consumption because he had never encountered a challenge to the consumption of a sample.

**{¶18}** Rice argues that the State acted in bad faith because it made a unilateral decision to destroy the evidence at issue and deprived the defense of the opportunity to have the samples independently tested.

> Bad faith implies more than bad judgment or negligence; instead, it "imports a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud. It also embraces actual intent to mislead or deceive another." (Internal citation omitted.) *Hoskins v. Aetna Life Ins. Co.*, 6 Ohio St.3d 272, 276 (1983).

*State v. Dunn*, 9th Dist. No. 03CA0037, 2004-Ohio-2249, ¶ 63. Rice concedes that Baumoel had no reason to know whether the samples would be exculpatory at the time of their destruction, as he approved their consumption before any testing had even occurred. *See State v. Osburn*, 9th Dist. No. 07CA0054, 2008-Ohio-3051, ¶ 16, quoting *Youngblood*, 488 U.S. at 56, fn. 1 ("The presence or absence of bad faith * * * must necessarily turn on the [State's] knowledge of the exculpatory value of the evidence at the time it was lost or destroyed."). Further, Rice has not shown that there was any conscious wrongdoing or intent to deceive on the part of the prosecutor. *Dunn* at ¶ 63. The record supports the trial court's conclusion that Rice failed to make a showing of bad faith. Accordingly, we conclude that the court properly denied Rice's motion to suppress. Rice's second assignment of error is overruled.

<u>Assignment of Error Number Three</u>

> THE TRIAL COURT ERRED BY DENYING APPELLANT'S MOTION IN LIMINE TO PROHIBIT EVIDENCE OBTAINED FROM THE STATE'S FORENSIC EXAMINATION OF THE DESKTOP COMUPTER (sic) AND THE LAPTOP COMPUTER.

Assignment of Error Number Four

THE TRIAL COURT ABUSED ITS DISCRETION WHEN THE PROBATIVE VALUE OF THE EVIDENCE OBTAINED FROM THE STATE'S FORENSIC EXAMINATION OF THE COMPUTERS WAS SUBSTANTIALLY OUTWEIGHED BY THE DANGER OF UNFAIR PREJUDICE.

{¶19} In his third and fourth assignments of error, Rice argues that the court erred by admitting the images the State's experts found on the computers taken from Rice's home. He argues that the State did not lay a foundation for the images and that the images were substantially more prejudicial than probative.

{¶20} "A court's ruling on a motion in limine does not preserve issues related to evidentiary rulings for appeal." *State v. Garfield*, 9th Dist. No. 09CA009741, 2011-Ohio-2606, ¶ 55. "[A]n appellate court need not review the propriety of such an order unless the claimed error is preserved by an objection * * * when the issue is actually reached * * * at trial." (Emphasis omitted.) *State v. Gray*, 9th Dist. No. 08CA0057, 2009-Ohio-3165, ¶ 7, quoting *State v. Grubb*, 28 Ohio St.3d 199, 203 (1986). "The law is well settled that failure to contemporaneously object during the identification of [evidence] and testimony regarding it forfeits appellate review." *State v. Cross*, 9th Dist. No. 25487, 2011-Ohio-3250, ¶ 49. *Accord State v. Stallworth*, 9th Dist. No. 25461, 2011-Ohio-4492, ¶ 21. And while an appellant who forfeits an objection may raise a claim of plain error on appeal, "this [C]ourt will not sua sponte undertake a plain-error analysis if a defendant fails to do so." *State v. Aguilar*, 9th Dist. No. 10CA0051, 2011-Ohio-6008, ¶ 5.

{¶21} Rice challenged the State's computer evidence in both written and oral motions in limine, but the trial court denied his motions. The State's computer expert, Erica Moore, then testified without objection. The State introduced all of the computer images Rice now challenges through Moore's testimony in the absence of any objection. Rice only sought to

exclude the images and related testimony in his motions in limine and later at the admission stage. He never contemporaneously objected when the State identified its evidence through Moore and displayed the images to the jury. Based on our review of the record, we must conclude that Rice forfeited his objections to the computer images and is limited to a claim of plain error on appeal. *Cross* at ¶ 49. Rice, however, does not argue plain error on appeal. Because this Court will not address a claim of plain error in the absence of an argument that plain error exists, we do not reach the merits of Rice's challenge to the computer evidence. *See Aguilar* at ¶ 5. Rice's third and fourth assignments of error are overruled.

Assignment of Error Number Five

> THE TRIAL COURT ERRED IN DENYING APPELLANT'S CRIMINAL
> RULE 29 MOTION FOR ACQUITTAL.

{¶22} In his fifth assignment of error, Rice argues that all of his convictions[1] that arise from the images the State collected from his family's computers are based on insufficient evidence. We disagree.

{¶23} In order to determine whether the evidence before the trial court was sufficient to sustain a conviction, this Court must review the evidence in a light most favorable to the prosecution. *State v. Jenks*, 61 Ohio St.3d 259, 273 (1991).

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

---

[1] For ease of analysis, this Court refers to the guilty verdicts Rice challenges as "convictions," but recognizes that several of his guilty verdicts are not "convictions" as a matter of law because they resulted in allied offenses for which Rice did not receive a sentence.

*Id.* at paragraph two of the syllabus; *see also State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). "In essence, sufficiency is a test of adequacy." *Thompkins*, 78 Ohio St.3d at 386.

{¶24} "No person, with knowledge of its character or content, shall recklessly * * * [d]irectly sell, deliver, furnish, disseminate, provide, exhibit, rent, or present to a juvenile * * * any material or performance that is obscene or harmful to juveniles." R.C. 2907.31(A)(1). Whoever commits the foregoing offense is guilty of disseminating matter harmful to juveniles. R.C. 2907.31(F).

{¶25} "No person, with knowledge of the character of the material or performance involved, shall * * * [b]uy, procure, possess, or control any obscene material, that has a minor as one of its participants." R.C. 2907.321(A)(5). Whoever commits the foregoing offense is guilty of pandering obscenity involving a minor. R.C. 2907.321(C).

{¶26} "No person, with knowledge of the character of the material or performance involved, shall * * * [k]nowingly solicit, receive, purchase, exchange, possess, or control any material that shows a minor participating or engaging in sexual activity, masturbation, or bestiality." R.C. 2907.322(A)(5). Whoever commits the foregoing offense is guilty of pandering sexually oriented matter involving a minor. R.C. 2907.322(C).

{¶27} "No person shall * * * [p]ossess or view any material or performance that shows a minor who is not the person's child or ward in a state of nudity" absent certain enumerated circumstances. R.C. 2907.323(A)(3). Whoever commits the foregoing offense is guilty of the illegal use of a minor in a nudity-oriented material or performance. R.C. 2907.323(B).

{¶28} The jury found Rice guilty of six counts based on the evidence the State removed from his family's two computers. Moore, a computer forensic specialist for BCI, analyzed the desktop and laptop computers. Moore testified that she found child pornography on both hard

drives in the form of pictures, a movie, text, and search terms. Among other items, Moore found the following references: "Incest Taboo," "How to Teach the Unexperienced About Sex," "Teen Gangbang," "My Daughter and I Have Become Lovers Part One – Incest Taboo Open Sex Forum," "A clueless Mother," "Daddy and Me," "Daddy's Little Slut," and "First Time w/ Daughter." Moore found 80 references to incest on the laptop hard drive. The desktop computer contained similar results, including 1,292 graphic images Moore believed to be child pornography. It also contained a brief movie that featured a minor engaged in sexual activity.

{¶29} Although the movie and some of the images Moore discovered had creation or access dates, most of the evidence she found did not. Moore explained that she located most of the evidence in the unallocated space on the two hard drives. Unallocated space houses unsaved or deleted data on a computer's hard drive until other data overwrites it. Moore testified that the average computer user will not be able to access data housed in unallocated space, but that the information can be excised with the proper software and training. She further stated that deleted files in the unallocated space do not have dates associated with them, such as the dates the files were created, accessed, or modified, because deleted files are no longer saved and their file paths no longer exist.

{¶30} Rice does not challenge any of the elements of his convictions. Instead, he argues that all of the counts stemming from the computer evidence must fail on sufficiency grounds because the State did not prove that he downloaded, accessed, viewed, and/or deleted any of the pornographic material on the computers "at any particular time, place[,] or date." M.R. testified that Rice forced her to view pornographic images on the computers, as well as the movie featuring child pornography, at various times throughout the period he sexually abused her. As noted, however, most of the images and data Moore excised from the computers did not have any

dates associated with them because Moore was only able to retrieve them from unallocated space. Rice argues that his guilty verdicts cannot stand in the absence of such evidence because someone else might have placed the pornographic materials on the computer.

{¶31} None of Rice's charges required the State to prove that he was the one responsible for creating or saving the pornographic material. Rice's charges only required proof that he possessed the material at some point and presented it to his daughter. *See State v. Knode*, 9th Dist. No. 03CA014, 2003-Ohio-7186, ¶ 19-27 (upholding pandering conviction when State could not prove date upon which temporary internet file image was downloaded, but proved defendant's possession of the image). Possession is "a voluntary act if the possessor knowingly procured or received the thing possessed, or was aware of the possessor's control of the thing possessed for a sufficient time to have ended possession." *State v. Butler*, 9th Dist. No. 24446, 2009-Ohio-1866, ¶ 18, quoting R.C. 2901.21(D)(1). M.R.'s testimony, if believed, would establish that Rice possessed the pornographic materials he forced her to view during the times that he sexually abused her. Although the evidence of possession and presentment was circumstantial, "[c]ircumstantial evidence and direct evidence inherently possess the same probative value." *State v. Reglus*, 9th Dist. No. 25914, 2012-Ohio-1174, ¶ 13, quoting *Jenks*, 61 Ohio St.3d at paragraph one of the syllabus. Rice has not set forth any law or analysis to show that the State was required to prove anything more. *See* App.R. 16(A)(7). His argument that his convictions are based on insufficient evidence lacks merit. Rice's fifth assignment of error is overruled.

Assignment of Error Number Six

THE TRIAL COURT'S JUDGMENT WAS AGAINST THE MANIFEST
WEIGHT OF THE EVIDENCE.

**{¶32}** In his sixth assignment of error, Rice argues that his convictions are against the manifest weight of the evidence. We disagree.

**{¶33}** In determining whether a conviction is against the manifest weight of the evidence an appellate court:

> must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). A weight of the evidence challenge indicates that a greater amount of credible evidence supports one side of the issue than supports the other. *Thompkins*, 78 Ohio St.3d at 387. Further, when reversing a conviction on the basis that the conviction was against the manifest weight of the evidence, the appellate court sits as the "thirteenth juror" and disagrees with the factfinder's resolution of the conflicting testimony. *Id.* Therefore, this Court's "discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). *See also Otten*, 33 Ohio App.3d at 340.

**{¶34}** Rice argues that his convictions are against the manifest weight of the evidence because the evidence showed that he was always a loving father and that his daughter fabricated the allegations against him. Rice points to the evidence in the record that M.R. was aware of the financial difficulties that her family was experiencing at the time she accused him, as well as her parents' intent to divorce. Essentially, Rice argues that the jury lost its way by believing M.R.'s version of the events instead of his own.

**{¶35}** A jury is free to believe or reject the testimony of each witness, and issues of credibility are primarily reserved for the trier of fact. *State v. Frazier*, 9th Dist. No. 25654, 2012-Ohio-790, ¶ 56. M.R. testified that Rice sexually abused her on numerous occasions and that, on the night before she finally told her mother about the abuse, Rice licked her right breast and performed oral sex on her. Samples taken during M.R.'s rape exam the following day confirmed that the foreign DNA found on her right breast was consistent with Rice's DNA profile. The State also produced evidence of a large amount of pornographic material taken from the family's computers. The material contained numerous references to incest, particularly incest between fathers and daughters. M.R.'s mother also testified that Rice confessed to having sexually assaulted M.R. when she confronted him the morning M.R. told her about the abuse. Based on our review of the record, we cannot conclude that this is the exceptional case where the jury lost its way in choosing to believe that Rice committed the crimes here. *See Martin* at 175. Rice's sixth assignment of error is overruled.

Assignment of Error Number Seven

> THE CUMMULATIVE (sic) EFFECT OF THE TRIAL COURT'S ERRORS DENIED APPELLANT A FAIR TRIAL[.]

**{¶36}** In his seventh assignment of error, Rice argues that cumulative errors in the proceeding deprived him of his constitutional right to a fair trial. We disagree.

**{¶37}** Cumulative error exists only where the errors during trial actually "deprive[d] a defendant of the constitutional right to a fair trial." *State v. DeMarco*, 31 Ohio St.3d 191 (1987), paragraph two of the syllabus. "'[T]here can be no such thing as an error-free, perfect trial, and * * * the Constitution does not guarantee such a trial.'" *State v. Hill*, 75 Ohio St.3d 195, 212 (1996), quoting *United States v. Hasting*, 461 U.S. 499, 508-509 (1983). Moreover, "errors cannot become prejudicial by sheer weight of numbers." *Hill*, 75 Ohio St.3d at 212.

**{¶38}** After reviewing the record, we cannot say that Rice's trial was plagued with numerous errors or that his constitutional right to a fair trial was violated. Therefore, Rice's seventh assignment of error is overruled.

## III

**{¶39}** Rice's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

————

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

BETH WHITMORE
FOR THE COURT

MOORE, J.
<u>CONCURS.</u>

BELFANCE, J.
<u>CONCURS IN JUDGMENT ONLY.</u>


<u>APPEARANCES:</u>

JAMES K. REED, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.