[Cite as *State v. Frazier*, 2012-Ohio-790.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| STATE OF OHIO | C.A. No.     25654 |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| COTY T. FRAZIER | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No.     CR 08 10 3462 |

DECISION AND JOURNAL ENTRY

Dated: February 29, 2012

MOORE, Judge.

{¶1}    Appellant, Coty T. Frazier, appeals the judgment of the Summit County Court of Common Pleas.  This Court affirms.

I.

{¶2}    On October 11, 2008, Coty T. Frazier was arrested due to incidents that occurred at 542 Tennessee Place in the City of Barberton from October 8, 2008, through October 11, 2008.  Toka Williams, who resides at 542 Tennessee Place, had been in an "on-and-off" relationship with Frazier since January 2001.  They had two children together.  During the course of the relationship, Frazier was convicted of domestic violence in 2004 and 2005.  Toka was the victim in each case.

{¶3}    Toka testified that, on October 8, 2008, Frazier pushed her, pulled her off the couch, placed his hands around her neck, and kicked her in the back.  Police responded, but did not press charges.  On October 9, 2008, Toka again called the police to report damage to her car.

She believed Frazier was responsible for the damage. On October 10, 2008, Toka received threatening voicemails from Frazier. In them he threatens to come to her home dressed in black to shoot her in her face. On that same date, Frazier came to her residence and a physical altercation ensued between him and Matt Paig. Toka had become romantically involved with Paig. Toka again called the police regarding the incident, and asked the officer to listen to the threatening voicemails as well. Later that evening, Frazier returned and Toka heard shots while she was standing on her front porch. She testified that she did not see what happened because she wears glasses and it was dark outside. She told police that she had seen Frazier with a gun in the past.

{¶4} Lucretia Williams testified that she was at her daughter's apartment on October 10, 2008. She knew both Frazier and Toka because her daughter lives near Toka's residence. Lucretia heard a sound, which she described as a "pow," followed by her neighbors saying that someone had fired a gun into the air. Lucretia grabbed her binoculars and observed Frazier, wearing a black hooded sweatshirt, shooting a firearm toward Toka's residence at 542 Tennessee Place. She testified that she observed two shots, and then the gun appeared to jam, and she subsequently saw another shot fired. She averred that she heard Frazier say, "Die, bitch, die" and "To the grave, to the grave." Lucretia subsequently called 911. The 911 call was played for the jury. In it, Lucretia stated that she witnessed shots fired at 512 Tennessee Place and identified the shooter as Frazier. She described Frazier as a black male wearing a black hoodie.

{¶5} Gary Lee Bland testified that he was at his sister's house on October 10, 2008. She lives in the same complex as Toka. Bland also knew Frazier from the apartment complex. Bland testified that he heard a gunshot, looked out the window, and witnessed Frazier firing a handgun toward the building where the mother of Frazier's children resides. He also testified

that Frazier was wearing a black hooded sweatshirt. The following day, Frazier arrived at Bland's sister's residence and asked to use the phone. Shortly thereafter, police arrived and Frazier attempted to run but was arrested. Bland admitted that he initially gave police his brother's name because he had a warrant. Consequently, he was arrested and charged with obstruction of official business. At the time of trial, Bland was incarcerated in the Summit County jail and charges were still pending against him.

{¶6} Officer Brian Brown, a sergeant with the Barberton Police Department, testified that he responded to a domestic violence call at 542 Tennessee Place on October 8, 2010. When he arrived, Toka was crying and stated that she and Frazier had been in an argument. Frazier would not leave her alone, and had taken her keys. She wanted her keys back and wanted "to be done with him." The officer told Frazier to stay away or he would be charged with trespass.

{¶7} Officer Stacy Colgan, a Barberton Police Officer, testified that she responded to a 911 call at 542 Tennessee Place on October 10, 2011 at around 4:15 in the afternoon. Toka told her that Frazier had come into her house unannounced and started an altercation with Paig. Frazier subsequently left, but had since been leaving her threatening voicemails. Officer Colgan listened to and subsequently recorded the voicemails. She testified that Toka was upset about the voicemails and that she wished to press domestic violence charges based on the threats.

{¶8} That same day, Officer Colgan received a second 911 call around 9:05 in the evening regarding shots being fired. She arrived on scene and discovered some spent shell casings and a live bullet. She testified that shootings were uncommon in this area. She further testified that she was not surprised to be called back out to the residence because the voicemails "were very specific in what [Frazier] intended to do to [Toka]."

{¶9} Detective Shannon Davis, a detective with the Barberton Police Department, testified regarding the events as well. During her testimony, a video tape from a surveillance camera in the parking lot was played for the jury. In it, Frazier is seen in the parking lot, facing Toka's residence, wearing dark clothing. She further averred that the clothing worn by the person in the video, which included a hooded sweatshirt, matched the description of the clothing that Frazier was wearing at the time of his arrest. She testified that Frazier had told her that he did not make any calls to Toka, even though the voicemails were later confirmed to be from him. Frazier also told her that he had no prior convictions for domestic violence in this country. At trial he stipulated to three prior domestic violence convictions.

{¶10} On October 30, 2008, the Summit County Grand Jury indicted Frazier on one count of felonious assault in violation of R.C. 2903.11(A)(2), a felony of the second degree, one count of improperly discharging a firearm at or into a habitation or school in violation of R.C. 2923.161(A)(1), a felony of the second degree, one count of having weapons under disability in violation of R.C. 2923.14, a felony of the third degree, one count of domestic violence stemming from the October 8, 2008 incident in violation of R.C. 2919.25(A), a felony of the third degree, one count of domestic violence stemming from the October 10, 2008 incident in violation of R.C. 2919.25(A), a felony of the third degree, one count of domestic violence stemming from the October 10, 2008 incident in violation of R.C. 2919.25(C), a misdemeanor of the first degree, and one count of menacing by stalking in violation of R.C. 2903.211(A)(1), a felony of the fourth degree. Frazier was further charged with a firearm specification with regard to the charges of felonious assault and improperly discharging a firearm at or into a habitation or school. Frazier pled not guilty to the counts in the indictment and the matter proceeded to a jury trial. Frazier stipulated to having three prior domestic violence convictions.

{¶11} At trial, Frazier admitted that he was outside in the parking lot at the time of the shooting and admitted that the man on the surveillance video tape was him. He denied shooting a firearm toward Toka's residence and instead argued that he was confronted by a man dressed in black who sounded like Paig. The man fired two shots into the air and said, "What's up now?" He told Detective Davis that a man fired a gun at him and then ran away.

{¶12} At the conclusion of trial, the jury found Frazier guilty of felonious assault, improperly discharging a firearm at or into a habitation or school, having weapons under disability, domestic violence stemming from the October 10, 2008 incident in violation of R.C. 2919.25(A), domestic violence stemming from the October 10, 2008 incident in violation of R.C. 2919.25(C), and menacing by stalking. The jury found Frazier not guilty of domestic violence stemming from the October 8, 2008 incident.

{¶13} On February 19, 2009, the trial court sentenced Frazier to three years of incarceration on the gun specification and ordered it to be served consecutively to the remaining charges. Frazier was sentenced to seven years of incarceration for felonious assault, seven years of incarceration for improperly discharging firearm at or into a habitation or school, four years of incarcerations for having weapons while under disability, four years of incarceration for domestic violence in violation of R.C. 2919.25(A), one hundred eighty days in the Summit County Jail for domestic violence in violation of R.C. 2919.25(C), and one year of incarceration for menacing by stalking. The trial court ordered that each of these sentences be served concurrently with each other, but consecutively with the three-year gun specification charge, for a total of ten years of incarceration.

{¶14}   Frazier timely filed a notice of appeal.  He raises eight assignments of error for our review.  We have consolidated some of the assignments of error and address them out of order to facilitate our review.

II.

**ASSIGNMENT OF ERROR II**

PURSUANT TO [FRAZIER'S] CONSTITUTIONAL RIGHT TO DUE PROCESS, THE TRIAL COURT EMPLOYED THE WRONG LEGAL STANDARD FOR EXAMINING THE SUITABILITY OF A JUROR, THEREBY ENTITLING [HIM] TO A NEW TRIAL.

{¶15}   In his second assignment of error, Frazier contends that the trial court applied the incorrect legal standard in reviewing whether to excuse a prospective juror for cause.  We do not agree.

{¶16}   Generally matters of whether to excuse prospective jurors for cause are left to the sound discretion of the trial court.  *See State v. Cornwell*, 86 Ohio St.3d 560, 563 (1999).  But whether the trial court made an error as a matter of law in applying the incorrect legal standard is a question that we review de novo.  *See Med. Mut. of Ohio v. Schlotterer*, 122 Ohio St.3d 181, 2009-Ohio-2496, ¶ 13.  "When a court's judgment is based on an erroneous interpretation of the law, an abuse-of-discretion standard is not appropriate."  *Id*., citing *Swartzentruber v. Orrville Grace Brethren Church*, 163 Ohio App.3d 96, 2005-Ohio-4264, ¶ 6 (9th Dist.).

{¶17}   Frazier directs this Court to *State v. Moss*, 9th Dist. No. 24511, 2009-Ohio-3866, to support his contention that he is entitled to a new trial because the court applied the wrong standard of law.  In *Moss*, the State had moved to excuse a venireperson for cause.  The trial court excused the venireperson, not under the applicable standard set forth in R.C. 2945.25(B), but instead under the standard set forth in *Batson v. Kentucky*, 476 U.S. 79 (1986).  *Id*. at ¶ 12.  The *Batson* standard, however, is only applicable to peremptory challenges.  *Id*.  In *Moss*, we

held that the trial court's application of "the lesser standard relative to a peremptory challenge, [and] not the loftier standard applicable to a challenge for cause" warranted reversal. *Id*. at ¶ 13.

**{¶18}** Here, the State also moved to excuse a venireperson for cause. While the trial court mentioned *Batson*, it is apparent from the record that the trial court actually applied the appropriate standard set forth in R.C. 2945.25. R.C. 2945.25 and Crim.R. 24(C) provide the reasons for which a juror in a criminal matter can be removed for cause. R.C. 2945.25 states, in relevant part:

> A person called as a juror in a criminal case may be challenged for the following causes:
>
> * * *
>
> (B) That he is possessed of a state of mind evincing enmity or bias toward the defendant or the state; but no person summoned as a juror shall be disqualified by reason of a previously formed or expressed opinion with reference to the guilt or innocence of the accused, if the court is satisfied, from examination of the juror or from other evidence, that he will render an impartial verdict according to the law and the evidence submitted to the jury at the trial[.]

**{¶19}** Similarly, Crim.R. 24(C) states, in relevant part:

> (C) Challenge for cause. A person called as a juror may be challenged for the following causes:
>
> * * *
>
> (9) That the juror is possessed of a state of mind evincing enmity or bias toward the defendant or the state; but no person summoned as a juror shall be disqualified by reason of a previously formed or expressed opinion with reference to the guilt or innocence of the accused, if the court is satisfied, from the examination of the juror or from other evidence, that the juror will render an impartial verdict according to the law and the evidence submitted to the jury at the trial.

**{¶20}** In *State v. Moss*, we further stated that "[a]s long as a trial court is satisfied, following additional questioning of the prospective juror, that the juror can be fair and impartial and follow the law as instructed, the court need not remove that juror for cause." *Moss* at ¶ 11.

{¶21} Here, the trial court did not expressly state that it was excusing the venireperson under *Batson*. Instead, it stated that it was excusing the venireperson because the venireperson believed that the State should not "pursue domestic violence prosecutions" when there are no physical injuries. This indicates that the trial court was excusing the venireperson under R.C. 2945.25(B) for bias toward the State. Clearly, the trial judge was not satisfied that the venireperson could render an impartial verdict on the evidence. *See also State v. White*, 9th Dist. No. 24960, 2010-Ohio-2865, ¶ 12 (distinguishing *Moss* because the trial court excused the venireperson for hardship, not expressly under *Batson*). Accordingly, notwithstanding the reference to *Batson,* the trial court applied the correct legal standard in dismissing the venireperson for cause. Frazier's second assignment of error is overruled.

## ASSIGNMENT OF ERROR I

PURSUANT TO [FRAZIER'S] CONSTITUTIONAL RIGHT TO DUE PROCESS, THE TRIAL COURT ERRED BY FAILING TO SUSTAIN [HIS] OBJECTION TO REMOVING A JUROR *FOR CAUSE* WHERE NO SUCH CAUSE EXISTS, THEREBY ENTITLING [HIM] TO A NEW TRIAL.

{¶22} In his first assignment of error, Frazier contends that the trial court erred in allowing the removal of a venireperson for cause because no such cause existed. We do not agree.

{¶23} We review the trial court's decision to grant the for-cause challenge under the abuse of discretion standard. *State v. Smith*, 80 Ohio St.3d 89, 105 (1997). Under this standard, we must determine whether the trial court's decision was arbitrary, unreasonable, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). As discussed above, R.C. 2945.25 and Crim.R. 24 provide the reasons for which a venireperson in a criminal matter can be removed for cause. One such reason is evidence of bias toward the defendant or the State. R.C. 2945.25(B). "As long as a trial court is satisfied, following additional questioning of the

prospective juror, that the juror can be fair and impartial and follow the law as instructed, the court need not remove that juror for cause." *Moss* at ¶ 11.

{¶24} During voir dire, the venireperson indicated that two of his cousins had been "railroaded" in domestic violence cases involving the same prosecutor. He indicated that he was "very close" to them and that he did not feel they were treated fairly by the court system. In addition, he believed that domestic violence cases should not be pursued where there are no injuries to the victim. While the venireperson did indicate that he could be fair and impartial, "[t]he determination of juror bias necessarily involves a judgment on credibility, the basis of which often will not be apparent from an appellate record. *Wainwright v. Witt*, 469 U.S. 412, 429 (1985). For this reason, 'deference must be paid to the trial judge who sees and hears the juror.' *Id*. at 426." *State v. DePew*, 38 Ohio St.3d 275, 280 (1988). Because Frazier has failed to demonstrate that the trial court's decision to excuse the juror for cause was an abuse of discretion, his first assignment of error is overruled.

## ASSIGNMENT OF ERROR V

PURSUANT TO THE EQUAL PROTECTION CLAUSE IN THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION, THE TRIAL COURT ERRED BY FAILING TO SUSTAIN [FRAZIER'S] OBJECTION TO THE PROSECUTION'S PEREMPTORILY [SIC] REMOVING THE ONLY AFRICAN AMERICAN JUROR, THEREBY ENTITLING [HIM] TO A NEW TRIAL.

{¶25} In his fifth assignment of error, Frazier argues that the trial court erred in allowing the peremptory removal of the only African American venireperson. Our dispositions of the first and second assignments of error indicate that the trial court properly excused the venireperson for cause. This assignment of error merely reiterates the issues already discussed in the above assignment of error. For the reasons set forth in discussion of the first and second assignments of error, Frazier's fifth assignment of error is likewise overruled.

## ASSIGNMENT OF ERROR III

PURSUANT TO [FRAZIER'S] CONSTITUTIONAL RIGHT TO DUE PROCESS, THE TRIAL COURT ERRED BY FAILING TO SUSTAIN [HIS] OBJECTION TO REMOVING A HISPANIC/PUERTO RICAN JUROR *FOR CAUSE* WHERE NO SUCH CAUSE EXISTS, THEREBY ENTITLING [HIM] TO A NEW TRIAL.

{¶26} In his third assignment of error, Frazier contends that the trial court erred in removing a Puerto Rican venireperson for cause where no such cause existed. We do not agree.

{¶27} Under R.C. 2945.25(N), a person called as a juror in a criminal case may be challenged if "English is not his native language, and his knowledge of English is insufficient to permit him to understand the facts and law in the case[.]" The State moved to have the juror excused because he indicated that he had difficulty understanding English, the parties had difficulty understanding him, and the State also expressed concern that the language barrier could create problems during deliberations.

{¶28} The trial court's decision to grant the for-cause challenge must be reviewed under the abuse of discretion standard. *Smith*, 80 Ohio St.3d at 105. We must determine whether the trial court's decision was arbitrary, unreasonable, or unconscionable. *Blakemore*, 5 Ohio St.3d at 219. "Crim. R. 24(B)(13) provides that a person may be challenged for cause when 'English is not his native language, and his knowledge of English is insufficient to permit him to understand the facts and the law in the case.'" *State v. Getsy*, 84 Ohio St.3d 180, 192 (1998).

{¶29} The trial court determined that the venireperson's knowledge of the English language was insufficient and excused him for cause. "We must defer to that finding if the record supports it[.]" *State v. Group*, 98 Ohio St.3d 248, 2002-Ohio-7247, ¶ 59, citing *State v. Wilson*, 29 Ohio St.2d 203, 211 (1972). A review of the transcript indicates that the venireperson's native language was Spanish. He averred that it could at times be hard to

understand the proceedings. In addition, he felt that the language barrier could affect his ability to be a fair juror on the case. Because the record supports the trial judge's decision to grant the challenge for cause, Frazier's third assignment of error is overruled.

## ASSIGNMENT OF ERROR IV

PURSUANT TO [FRAZIER'S] CONSTITUTIONAL RIGHT TO DUE PROCESS, THE TRIAL COURT EMPLOYED THE WRONG LEGAL STANDARD FOR EXAMINING THE SUITABILITY OF A JUROR, THEREBY ENTITLING [HIM] TO A NEW TRIAL.

{¶30} In his fourth assignment of error, Frazier contends that the trial court applied the wrong legal standard in examining the suitability of a venireperson. We do not agree.

{¶31} As stated in the second assignment of error, generally matters of whether to excuse prospective jurors for cause are left to the sound discretion of the trial court. *See Cornwell*, 86 Ohio St.3d at 563. But whether the trial court made an error as a matter of law in applying the incorrect legal standard is a question that we review de novo. *See Schlotterer* at ¶ 13. "When a court's judgment is based on an erroneous interpretation of the law, an abuse-of-discretion standard is not appropriate." *Id.*, citing *Swartzentruber* at ¶ 6.

{¶32} As discussed in the third assignment of error, the State moved to have the venireperson excused for cause. The trial court properly reviewed the challenge under the for-cause standard and excused the venireperson because "he did indicate concern whether he could understand [English] well enough[.]" Although this was not a peremptory challenge, defense counsel expressed his "greater concern" that the trial court was "removing all the non[-]Caucasian people from this jury." The trial court said the "Batson case doesn't talk about all non[-]Caucasian, so I don't think it's subject to a Batson challenge." As this statement by the court may have caused confusion, we will further address Frazier's arguments.

{¶33} Frazier correctly points out that "the Equal protection Clause of the United States Constitution prohibits deliberate discrimination based on race by a prosecutor in his exercise of peremptory challenges." *Moss* at ¶ 9, citing *Batson*, 476 U.S. at 89. In *Batson*, the defendant, who was black, appealed the prosecution's use of peremptory challenges to remove "all four black persons on the venire" leaving a jury composed of only white persons. *Id*. at 83. The United States Supreme Court held that "[p]urposeful racial discrimination in selection of the venire violates a defendant's right to equal protection because it denies him the protection that a trial by jury is intended to secure." *Id*. at 86.

{¶34} The United States Supreme Court further held that a prima facie case of purposeful discrimination in selection of the petit jury may be established by: (1) showing that the defendant "is a member of a cognizable racial group * * * and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race," (2) relying on the undisputable fact "that peremptory challenges constitute a jury selection practice that permits those to discriminate who are of a mind to discriminate," and (3) "that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race." (Internal citations and quotations omitted.) *Id*. at 96. Once the inference of purposeful discrimination is established, "the burden shifts to the State to come forward with a neutral explanation for challenging black jurors." *Id*. at 97.

{¶35} The *Batson* holding was extended in *Powers v. Ohio*, 499 U.S. 400 (1991). In *Powers,* a defendant, who was white, objected to the State's use of peremptory challenges to remove seven black venirepersons from the jury. He requested the trial court to compel the prosecutor to explain, on the record, his reasons for excluding the black venirepersons. His

objections were overruled. The United States Supreme Court acknowledged that *Batson* "spoke of the harm caused when a defendant is tried by a tribunal from which members of his own race have been excluded." *Id*. at 406. However, "*Batson* was designed to serve multiple ends, only one of which was to protect individual defendants from discrimination in the selection of jurors. *Batson* recognized that a prosecutor's discriminatory use of peremptory challenges harms the excluded jurors and the community at large." (Internal citations and quotations omitted.) *Id*. The Court went on to hold that "a criminal defendant may object to race-based exclusions of jurors effected through peremptory challenges whether or not the defendant and the excluded juror share the same races." *Id*. at 402.

{¶36} A *Batson* objection was also analyzed in *Hernandez v. New York*, 500 U.S. 352 (1991), where a prosecutor had used peremptory challenges "to exclude Latino potential jurors." *Id*. at 356. The prosecutor argued that he had struck these two jurors, who were both bilingual, because he was "uncertain that they would be able to listen and follow the interpreter" particularly because they had "looked away from [him]" and hesitated before responding to his inquiry whether they would accept the translator as the final arbiter of the witnesses' responses. *Id*. On appeal, Hernandez argued that the explanation was not "race neutral." *Id*. at 359. The United States Supreme Court noted that "[i]n evaluating the race neutrality of an attorney's explanation, a court must determine whether, assuming the proffered reasons for the peremptory challenges are true, the challenges violate the Equal Protection Clause as a matter of law. A court addressing this issue must keep in mind the fundamental principle that official action will not be held unconstitutional solely because it results in a racially disproportionate impact. Proof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause." (Internal citations and quotations omitted.) *Id*. at 359-60. The Court

concluded that the prosecutor offered a race-neutral basis for the peremptory strikes because he "explained that the specific responses and the demeanor of the two individuals during *voir dire* caused him to doubt their ability to defer to the official translation of Spanish-language testimony." *Id*. at 360.

{¶37} In the case at hand, although the trial court mentioned *Batson*, it is clear from the record that it properly reviewed the challenge under the challenge-for-cause standard. As such, Frazier's argument that the trial court applied the lesser legal standard from *Batson* relative to a peremptory challenge, and not the loftier standard applicable to a challenge for cause, is without merit.

{¶38} As to Frazier's argument that the trial court was "removing all the non[-]Caucasian people from the jury[,]" the Ohio Supreme Court has stated that "[t]he right to trial by an impartial jury means that prospective jurors must be selected by officials without the systematic and intentional exclusion of any cognizable group. However it is not necessary that every jury contain representatives of all economic, social, religious, racial, political, and geographical groups in the community." *State v. Johnson*, 31 Ohio St.2d 106, 114 (1972). The Ohio Supreme Court has also noted that "[a] party has no right to have any particular juror on the panel. His right is to an impartial jury[.]" *State v. Murphy*, 91 Ohio St.3d 516, 525 (2001). Frazier has made no arguments regarding the impartiality of the remaining jurors. His fourth assignment of error is overruled.

## ASSIGNMENT OF ERROR VI

PURSUANT TO THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION AND ARTICLE ONE, SECTION 10 OF THE OHIO CONSTITUTION, THE TRIAL COURT ERRED TO THE PREJUDICE OF [FRAZIER] IN DENYING [HIS CRIMINAL] RULE 29 MOTION FOR ACQUITTAL ON THE CHARGES OF FELONIOUS ASSAULT, IMPROPERLY DISCHARGING A FIREARM INTO A HABITATION,

WEAPONS UNDER DISABILITY, DOMESTIC VIOLENCE (BY USE OF THE FIREARM), DOMESTIC VIOLENCE (BY THREAT OF IMMINENT HARM), AND MENACING BY STALKING WHEN THE STATE FAILED TO PRESENT SUFFICIENT EVIDENCE TO SUSTAIN A CONVICTION.

{¶39} In his sixth assignment of error, Frazier contends that the trial court erred when it denied his Crim.R. 29 motion. We do not agree.

{¶40} Crim.R. 29(A) provides that a trial court "shall order the entry of a judgment of acquittal * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." When considering a challenge to the sufficiency of the evidence, the court must determine whether the prosecution has met its burden of production. To determine whether the evidence in a criminal case was sufficient to sustain a conviction, an appellate court must view that evidence in a light most favorable to the prosecution:

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of crime proven beyond a reasonable doubt.

*State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶41} In support of his sufficiency argument, Frazier contends that the State failed to establish that he fired a handgun, and thus he could not have committed the above charges. He further challenges the evidence presented as to whether the victim believed that he would cause her imminent physical harm. Finally, he challenges the credibility of the witnesses. We limit our review to the issues raised by Frazier.

Handgun

{¶42} The victim, Toka Williams, testified that she heard two gunshots on the night in question. Two of Frazier's acquaintances, Lucretia Williams and Gary Bland, testified that they

heard three to four shots and personally observed Frazier shooting a firearm in the direction of Toka's apartment. Specifically, Lucretia obtained binoculars after hearing a gunshot, and witnessed Frazier firing a gun from the parking lot. A video tape played for the jury shows Frazier and the parking lot. One live bullet and two casings were found at the scene. In a voicemail played for the jury, Frazier threatens the victim: "Bitch, I'm killing all you ass mother f*****s;" and "I'm in all black and I'm comin, I'll go to Tason Terrace, Crimson Terrace, parson, wherever to find you bitch and I'm gonna shoot you in your f***ing face * * *." Frazier was not apprehended until the next day.

{¶43} Frazier essentially argues that the State failed to present sufficient evidence because a handgun was never recovered. Circumstantial and direct evidence "possess the same probative value[.]" *Jenks*, 61 Ohio St.3d at paragraph one of the syllabus. Two witnesses testified that they witnessed the shots. Frazier threatened to shoot the victim in a voicemail played for the jury. Finally, Frazier was not apprehended until the day after the incident, providing him with ample opportunity to dispose of the weapon. After viewing this evidence in a light most favorable to the State, we conclude that the trier of fact could reasonably find that the State met its burden of production and presented sufficient evidence that he fired a handgun. Accordingly, this portion of his sixth assignment of error is overruled.

Imminent Physical Harm

{¶44} Frazier was convicted of domestic violence in violation of R.C. 2919.25(C), which provides: "No person, by threat of force, shall knowingly cause a family or household member to believe that the offender will cause imminent physical harm to the family or household member." Frazier argues that the State failed to present evidence that the victim believed he would cause her "imminent physical harm."

{¶45} The State presented the testimony of the victim, Toka. She testified that she called the police at least three times based on incidents involving Frazier. Her 911 calls were played for the jury. In addition, six voicemails were played for the jury in which Frazier threatens the victim. In one voicemail, Frazier threatens "Bitch * * * ain't gonna be nothing blessed about your day and night, [I'm] coming in all black, I'm warning you bitch I'm gonna shoot you." In a second voicemail, Frazier can be heard singing a song to Toka in which he repeats: "Do you really wanna die today? Won't hesitate to take your life away, I guarantee you won't see tomorrow."

{¶46} Toka called the police after receiving these voicemails from Frazier. Officer Colgan testified that Toka was upset about the voicemails and that she wished to press charges based on the threats made in the voicemails. Officer Colgan further testified that she was not surprised when she was called back out to the residence later that evening for a "shot-fired call" because the voicemails "were very specific in what [Frazier] intended to do to [Toka]."

{¶47} Lucretia and Bland both testified that they witnessed Frazier in the parking lot outside, dressed in dark clothing, firing a gun toward Toka's residence while Toka stood on the porch. A videotape was played for the jury in which Frazier is admittedly seen in the parking lot in dark clothing. Detective Davis testified that Toka stated that she was not concerned with the voicemails and that she did not feel threatened, but further testified that these statements were made on October 16, 2008, after Frazier was apprehended and remained in police custody.

{¶48} "While it is true that victims may change their testimony to protect a spouse, there must be some evidence either that a victim stated, or that from other evidence it could be inferred, that the victim thought that the accused would cause imminent physical harm." *Hamilton v. Cameron*, 121 Ohio App.3d 445, 449 (12th Dist.1997).

{¶49} Reviewing the evidence presented at trial in a light most favorable to the State, this Court concludes that any rational trier of fact could have found that the State presented sufficient evidence that Toka believed Frazier would "cause imminent physical harm[.]" Accordingly, this portion of his sixth assignment of error is overruled.

Witness Credibility

{¶50} Lastly, Frazier argues that there was insufficient evidence to support his convictions because the testimony by Lucretia and Bland was not credible. "Because an examination of the sufficiency of the evidence requires this Court to view the evidence in the light most favorable to the State, credibility is not implicated." (Internal citations omitted.) *State v. Garfield*, 9th Dist. No. 09CA009741, 2011-Ohio-2606, ¶ 6. Accordingly, Frazier's sixth assignment of error is overruled.

## ASSIGNMENT OF ERROR VII

PURSUANT TO ARTICLE FOUR SECTION 3(B)(3) OF THE OHIO CONSTITUTION, THE VERDICT OF GUILTY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE PRESENTED AT TRIAL AND WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE.

{¶51} In his seventh assignment of error, Frazier contends that the verdict was against the manifest weight of the evidence and was not supported by sufficient evidence. We do not agree.

{¶52} When a defendant asserts that his conviction is against the manifest weight of the evidence,

an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (1986).

{¶53} This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. *Id*. We limit our review to the manifest-weight issues raised by Frazier.

{¶54} Frazier argues that his conviction is against the manifest weight of the evidence because some of the testimony presented by the State was contradictory or not credible. First, he argues that the Lucretia and Bland were not credible witnesses and, therefore, their testimony should not have been given any weight. Specifically, Frazier argues that Lucretia's testimony lacks credibility because she had just purchased the binoculars on the date of the incident. Additionally, he argues that Lucretia contradicted herself when she testified that although it was too dark to see, she was able to see Frazier with the aide of the binoculars. Finally, Frazier argues that Lucretia's testimony lacks credibility because she did not take note of the "distinctive" striping on Frazier's pants.

{¶55} Likewise, Frazier argues that Bland's testimony lacks credibility because he too failed to notice the striping on his pants. In addition, Bland had lied to the police regarding his identity and also said that he hoped his assistance in this case might help him with his own criminal case. This information was elicited from Bland on direct examination. He admitted that he provided the officers with a false name because he had an outstanding warrant, but averred that no one promised him anything in exchange for his testimony.

{¶56} This Court has held that, "in reaching its verdict, the jury is free to believe all, part, or none of the testimony of each witness." *Prince v. Jordan*, 9th Dist. No. 04CA008423, 2004-Ohio-7184, ¶ 35, citing *State v. Jackson*, 86 Ohio App.3d 29, 33 (1993). Furthermore, "[t]he weight to be given the evidence and the credibility of the witness[es] are primarily for the trier of the facts"; in this case, the jury. *Id*. at 32-33, citing *State v. Richey*, 64 Ohio St.3d 353,

363 (1992). The jury had the opportunity to weigh the testimony of the witnesses, victim, and responding officers, view the video footage, and listen to the voicemails and 911 tapes, and "did not lose its way simply because it chose to believe the State's version of the events, which it had a right to do.'" *State v. Feliciano*, 9th Dist. No. 09CA009595, 2010-Ohio-2809, ¶ 50, quoting *State v. Morten*, 2d Dist. No. 23103, 2010-Ohio-117, ¶ 28.

**{¶57}** After reviewing the entire record, weighing the inferences and examining the credibility of the witnesses, we cannot say that the jury clearly lost its way and created a manifest miscarriage of justice. *Otten*, 33 Ohio App.3d at 340. Accordingly, Frazier's argument that the verdict was against the manifest weight of the evidence is overruled. To the extent that he reiterates the sufficiency arguments presented in the sixth assignment of error, it is also overruled.

<u>**ASSIGNMENT OF ERROR VIII**</u>

THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY FAILING TO SUSTAIN [FRAZIER'S] OBJECTION TO THE PROSECUTION SOLICITING EVIDENCE FROM A PURPORTED EXPERT THAT IS BOTH IRRELEVANT AND UNFAIRLY PREJUDICIAL TO [HIM].

**{¶58}** In his eighth assignment of error, Frazier argues that the trial court erred in admitting expert testimony that was both irrelevant and unfairly prejudicial to him. We conclude that Frazier has failed to demonstrate prejudice as a result of its admission.

**{¶59}** The State presented the testimony of Dana Zedak, a licensed social worker who is employed as the director of services at the Battered Women's Shelter, to testify as an expert regarding the dynamics of domestic violence. She provided general testimony of the dynamics of battered women's syndrome which include victims returning to their abuser after the abuse.

**{¶60}** The Ohio Supreme Court has recognized that the State may introduce testimony on the cycle of violence and battered-women's syndrome in its case-in-chief, provided that such

testimony is relevant and helpful. *State v. Haines*, 112 Ohio St.2d 393, 2006-Ohio-6711, ¶ 44. For such testimony to be relevant, the State must set forth the requisite evidentiary foundation showing that the witness is a battered woman. *Id.* at ¶ 46-47. Although the Court rejected any "set of rigid foundational requirements," it did impose two specific limitations on the admission of cycle of violence and battered-women's syndrome testimony. *Haines* at ¶ 47. First, the evidence must be rehabilitative in nature. *Id.* at ¶ 44. Second, the couple at issue must have "go[ne] through the battering cycle at least twice." *Id.* at ¶ 49, quoting *State v. Koss*, 49 Ohio St.3d 213, 216 (1990).

{¶61} Assuming without deciding that the trial court erred by admitting the expert testimony without *Haines'* foundational requirements having been met, we conclude that Frazier has failed to demonstrate prejudice as a result of its admission. "[T]he question is whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction." *Haines* at ¶ 62, quoting *State v. Conway*, 108 Ohio St.3d 214, 2006-Ohio-791, ¶ 78. We conclude that there is not.

{¶62} In *Haines*, the Ohio Supreme Court concluded that the evidence regarding one of the incidents for which Haines was charged was "almost entirely based upon [the victim's] testimony and therefore relie[d] on her credibility." *Haines* at ¶ 63. As such, "[t]here [was] a reasonable probability that evidence concerning her credibility might have contributed to the jury's verdict[.]" *Id.* On Haines' remaining counts, however, the Ohio Supreme Court concluded that the admission of the expert's testimony was harmless beyond a reasonable doubt because the jury also saw photographs of the victim's injuries and heard testimony from her co-workers and police officers. *Id.* at ¶ 64.

{¶63} Here, as in *State v. Anderson*, 9th Dist. No. 25377, 2011-Ohio-563, the expert did not offer an opinion as to whether Toka was a battered woman, and as such "the expert testimony elicited in this case was, by itself, less prejudicial than the testimony elicited in *Haines*." *Id*. at ¶ 17. Moreover, other evidence in the record went to the heart of Frazier's conviction. In fact, Toka's testimony was most helpful with regard to the incident that occurred on October 8, 2008, for which Frazier was acquitted. This in and of itself demonstrates that the jury did not heavily rely on the victim's testimony. Compare *Haines* at ¶ 63. Toka provided very little testimony with regard to the incident that occurred on October 10, 2008, except that she heard shots fired, she was on the porch of her residence, and that she could not see what happened because she wears glasses and it was dark outside.

{¶64} As to the incident on October 10, 2008, two eyewitnesses testified that they observed Frazier with a gun firing shots toward Toka and her residence. The witnesses further testified that Frazier was dressed in dark clothing. Frazier was arrested wearing clothing consistent with this testimony, and the clothing was identified by the witnesses at trial as the clothing he was wearing the night of the incident. Threatening voicemails, admittedly left by Frazier on Toka's cell phone, were played for the jury. In them he warns her that he is going to come to her house dressed in all black to shoot her. A videotape was played for the jury and Frazier admits that he can be seen in the parking lot of Toka's residence dressed in dark clothing. In the video he appears to be facing her residence and can be seen raising his arms, and then dropping them and looking downward, and raising them again. This is consistent with Lucretia's testimony that after he fired a shot, the gun appeared to jam and he was forced to dislodge it prior to firing additional shots. Two casings and a live bullet were recovered from the scene the day after the shooting. The recovered bullet was consistent with the testimony that a bullet had been

in the chamber when it jammed, and it was subsequently dislodged from the gun. Finally, nine police officers from the City of Barberton testified as to the events from October 8, 2008, through October 11, 2008. Each of the officers' testimony, corroborated by eyewitness testimony and evidence found at the scene, supports the contention that Frazier was responsible for the events in question.

{¶65} Given the other evidence in the record and the fact that the expert's opinion testimony was phrased in terms of generalities, we are not convinced that the admission of her testimony prejudiced Frazier. Therefore, even if the trial court erred in admitting the expert's testimony, its error was harmless beyond a reasonable doubt. Frazier's eighth assignment of error is overruled.

## III.

{¶66} Frazier's eight assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is

instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

CARLA MOORE
FOR THE COURT

WHITMORE, P. J.
DICKINSON, J.
CONCUR

APPEARANCES:

ERIC FINK, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.